UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

DARYL K. WASHINGTON, et al.,

                                    **Plaintiffs,**                      **05-CV-10034 (SN)**

            -against-                                      **OPINION & ORDER**

**KELLWOOD COMPANY,**

                                    **Defendant.**

-----------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge:**

      This case is set for retrial after the Court vacated the jury's damages award. The jury found that Kellwood Company had breached its licensing agreement with the plaintiffs (collectively, "Sunday Players") by failing to use reasonable efforts to market their start-up sports clothing brand. (The Court had previously found two other breaches of the contract.) The jury awarded lost profits in the amount of $4,350,000. But the verdict was too speculative. It relied on expert testimony that the fledgling Sunday Players would have sold half the volume of Under Armour, the market leader. The Court ruled as a matter of law that the expert's testimony amounted to "sheer surmise and conjecture" that was insufficient to support the verdict. ECF No. 212 at 28-29 (Order on Motion for Judgment as a Matter of Law ("JMOL Order")). But the Court also concluded that evidence in the record could show that Kellwood's breaches caused Sunday Players to lose business value. Retrial was scheduled on the question of damages. The plaintiffs' expert testimony was to be excluded as more prejudicial than probative.

      The parties dispute the scope of issues to be retried. Kellwood asserts that the retrial is limited to determining the value of Sunday Players as of the date of breach, March 15, 2005.

Kellwood seeks to exclude all other evidence and argues that without an expert witness, Sunday Players cannot establish non-speculative damage to their brand. Sunday Players argues that it should be allowed to retry a vast array of issues to overcome the deficiencies in their proof identified in the JMOL Order. Sunday Players seeks between $5 million and $140 million in damages—staggering figures in light of the Court's earlier ruling vacating a smaller verdict. Sunday Players argues that it can prove those damages through comparisons to Under Armour and Phat Fashions, a brand Kellwood bought for $140 million.

The second trial is not an opportunity to retry Sunday Players's original case. The JMOL Order put to rest both of Sunday Players's theories of damages. Sunday Players could not prove that Under Armour was an adequate market comparator, and it could not prove that Phat Fashion's purchase price was relevant to Sunday Players's value. Accordingly, the Court grants Kellwood's motion *in limine* in full. The Court also grants Sunday Players's motion to exclude the testimony of Kellwood's expert Gary Trugman. Given these rulings, the Court concludes as a matter of law that Sunday Players cannot marshal sufficient admissible evidence to prove its damages claims. Accordingly, the trial is adjourned. The Court will hear oral argument on why it should not modify the JMOL Order to award the plaintiffs nominal damages.

## I.    Law of the Case Doctrine

This Opinion and Order relies on decisions the Court has made in the past, including its Order on Summary Judgment and the JMOL Order.[1] "Under the law of the case doctrine, a decision on an issue made at one stage of a case becomes binding precedent to be followed in subsequent stages of the same litigation." In re PCH Assocs., 949 F.2d 585, 592 (2d Cir. 1991). This doctrine is grounded in "the desire to save judicial time" and the principle that "where

---

[1] It also assumes that the reader has read those opinions and is familiar with this case.

litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." Zdanok v. Glidden Co., 327 F.2d 944, 953 (2d Cir. 1964) (Friendly, J.). Nevertheless, the law of the case "does not rigidly bind a court to its former decisions, but is only addressed to its good sense." Higgins v. California Prune & Apricot Grower, Inc., 3 F.2d 896, 898 (2d Cir. 1924) (L. Hand, J.). "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks omitted).

## II.     Evidence of Lost Profits Will be Excluded

Kellwood contends that all evidence of lost profits should be excluded because the JMOL Order precludes any theory of lost profits damages. Further, Kellwood argues that Sunday Players, as a new business, cannot prove lost profits without expert testimony. The plaintiffs counter that they should have a second opportunity to prove that Under Armour was an adequate comparator company and that Sunday Players was not a new business.

The JMOL Order precludes any evidence of lost profits at the retrial. The Court concluded that Sunday Players did not have a "track record from which to prove the existence of lost profits." ECF No. 212 at 14. The plaintiffs relied solely on expert evidence showing that the historical sales of a comparable company could serve as an adequate "yardstick" for Sunday Players's lost profits. Scott A. Barnes, the expert, testified that Under Armour was a comparable company, but the Court concluded that Sunday Players had failed as a matter of law to prove the comparison. Sunday Players has not shown a compelling reason for the Court to revisit those rulings.

Sunday Players argues that the lay opinion testimony of its principals will be sufficient to prove lost profits damages. In its pretrial submission, it proffers witnesses who would testify to "projected profits" of the company. See ECF NO. 221 at 9-12 (Trial witness list). But there is no evidence—including no testimony from the first trial—that any of the Sunday Players's principals *projected* profits beyond their hope that they would be wildly successful in a market dominated by Under Armour. The evidence is plain that no one—from Sunday Players or Kellwood—did any analysis about how much money the License Agreement might generate. At a minimum, a business owner "must be able to point to some sales data or independent market report indicating that the business venture could make sales and be profitable." Ho Myung Moolsan, Co. Ltd. v. Manitou Mineral Water, Inc., 07-cv-7483 (RJH), 2010 WL 4892646, at *10 (S.D.N.Y. Dec. 2, 2010). In the case of an established business, that sales data could include a past sales history. But Sunday Players has no track record. In the absence of such evidence, it must avail itself of an expert comparison to another company to bridge the gap in its proof. See, e.g., Celebrity Cruises, Inc. v. Essef Corp., 478 F. Supp. 2d 440, 448-49 (S.D.N.Y. 2007). Its choice for a yardstick comparison has already been excluded as baseless.

Even if Sunday Players's principals were competent to estimate lost profits, the JMOL Order would preclude any argument that the losses were caused by Kellwood's breaches. The JMOL Order exhaustively detailed the gaps in Sunday Players's causation theory. See ECF No. 212 at 16-20. Sunday Players did not offer expert evidence showing that its preferred marketing strategy would have led to vast profits. And its lay opinion testimony stopped short of providing specific details that would have supported such a conclusion. Sunday Players has not shown a compelling reason to revisit those rulings, and they will not be relitigated.

### III. Kellwood's Expert Will be Excluded

Sunday Players moves to exclude the testimony of Gary Trugman, Kellwood's proffered expert witness. According to Sunday Players, Trugman cannot offer expert testimony about the company's value because he did not independently value the company. Sunday Players argues that Trugman's testimony was relevant only in rebuttal to Barnes's testimony, which the Court has already precluded. Kellwood counters that Trugman can testify because his report plainly stated that Sunday Players had no value.

Sunday Players has the better argument. Trugman's expert report, the Court's Daubert Order, and his actual testimony all indicate that he was a rebuttal witness. Trugman's report proffered seven expert conclusions that each related to deficiencies in Barnes's report. The Daubert Order ruled that Trugman's testimony was admissible only "to help the trier of fact to understand the evidence as presented by the Barnes Report." ECF No. 57 at 77 (Daubert Order) (internal quotation marks omitted). And Trugman himself testified that he was asked only to rebut Barnes's testimony and not to provide an independent estimate of the damages in the case. See ECF No. 180 at 36-38 (Trial Tr. at 1455:12-1457:7). In fact, when asked whether he could help the jury to "arrive at the right number for the appropriate damages in this case," Trugman responded: "I don't think it is my job." Id. at 37 (Tr. 1456:19-22).

Trugman's testimony was only admissible as rebuttal to Barnes. Barnes is excluded from retrial, and so is Trugman.

### IV. The Lost Value Evidence is Insufficient to Prove the Claimed Damages

Market value damages "are based on future profits as estimated by potential buyers who form the market and reflect the buyer's discount for the fact that the profits would be postponed and uncertain." ECF No. 212 at 28 (JMOL Order, internal quotation marks omitted). In other

5

words, the market value of a business "represents what a buyer is willing to pay for *the chance* to earn the speculative profits." Schonfeld v. Hilliard, 218 F.3d 164, 177 (2d Cir. 2000). In determining the market value of an asset, a plaintiff can rely on prior income history, expert opinion, evidence of sales of comparable assets, the testimony of the business's owner, and evidence of recent sales or recent offers for the company. See id. at 178-79.

Sunday Players seeks damages in an amount between $5 million and $140 million, but its proffered evidence will not support a lost value verdict of that size. It cannot show that its past profits justify a valuation in the millions, nor can it rely on speculative future profits. It cannot offer expert testimony of its value. It cannot offer admissible evidence of sales of comparable assets because the Court has already concluded that Under Armour and Phat Fashions are not comparable. Its owners are not competent to give a valuation estimate because the company had no significant track record. And it cannot present evidence of recent sales or recent offers to buy Sunday Players.

Sunday Players argues that its proffered witnesses can prove that the company had value through testimony regarding their past sales, marketing plans, the product's quality, and the company's connection to potential professional athlete endorsers. But the Court has already decided that this testimony was not sufficient to prove lost profits. For the same reason, it is not admissible to prove that the company had value. The lay expert testimony about Sunday Players's marketing efforts, product quality, and connection to athletes lacks specific data that would allow a jury to assess any value of the company.

Even if this evidence were probative, it is meaningless without expert testimony to quantify the value of the past sales and assets. Past sales are relevant for a valuation only if they are accompanied by expert testimony explaining their importance to a potential buyer. Likewise,

intangible assets like the company's brand name, its marketing plans, the quality of its clothing, and its connection to professional athletes are meaningless without expert testimony. Sunday Players already chose its expert, Barnes, and his theory relied entirely on the yardstick comparison with Under Armour. He did not opine on the value of the company's assets, and Sunday Players has no testimony that would transform qualitative assessments of the company's merits into quantitative assessments of its value.

### A. Prior Income

At the first trial, Sunday Players presented evidence that it had been selling product before signing the License Agreement. It also showed that its principals continued making sales during the period of the contract. But these total sales were minor, amounting to less than two hundred thousand dollars. They do not provide a basis for a multimillion dollar damages verdict. And if they did, Sunday Players would have to provide expert testimony explaining why.

### B. Expert Testimony

Sunday Players cannot offer any expert evidence of the company's value. In the first trial, the plaintiffs offered an expert valuation that relied on "sheer surmise and conjecture" and was set aside. See ECF No. 212 at 20-26, 29. In accordance with the JMOL Order, the Court will preclude Barnes from testifying. Id. at 29. The plaintiffs are not entitled to propound any new expert evidence in support of an alternative valuation theory.

### C. Evidence of Sales of Comparable Assets

The plaintiffs argue that they can offer evidence that Kellwood bought Phat Fashions for $140 million as evidence of Sunday Players's value. And they seek to introduce evidence of Under Armour's sales history as something a hypothetical buyer would consider when pricing

Sunday Players. But they have not established that either company was comparable to Sunday Players, and evidence relating to them is not relevant to prove lost value.

### 1.     Phat Fashions

The plaintiffs argue that Phat Fashions was comparable to Sunday Players because Kellwood's CEO purportedly told them that Phat Farm "could be" Sunday Players. The Court has already determined that this testimony, if true, "was mere flattery, not an objective value comparison, and it provided no basis for concluding that Sunday Players was worth millions of dollars." ECF No. 212 at 41. That is the law of the case. At the first trial, the plaintiffs did not establish that Phat Fashions was in any way comparable to Sunday Players because they did not establish that they sold similar clothing, shared customers, or had similar market share and capitalization. Trial established "only that Phat Fashions was already well-established when Kellwood bought it. Sunday Players was, by contrast, an anonymous start-up." Id.

Sunday Players reads the Court's JMOL Order as offering it a second chance to lay the foundation that Phat Fashions and Sunday Players were comparable companies. It does not. Sales of comparable businesses are only useful for determining an asset's market value because they help estimate the market's assessment of a chance to earn profits. Schonfeld, 218 F.3d at 177-78. The two businesses must therefore have closely related products, marketplaces, and past history of profits. As the Court has already concluded, trial evidence showed that Phat Fashions was already an established brand when Kellwood bought it. Sunday Players was not. There is no reason to think that the price Kellwood paid for Phat Fashions has any relevance to Sunday Players's business value. Allowing the jury to hear evidence that suggests otherwise will lead to mischief. It must therefore be excluded as more prejudicial than probative. Fed R. Evid. 403.

**2.     Under Armour**

Sunday Players argues that it can introduce Under Armour's history of past sales to prove its lost value. The JMOL Order already refuted this argument. At trial, the plaintiffs failed to prove that Under Armour was comparable to Sunday Players. The Court has already exhaustively examined the evidence for this comparison, and it will not do so again. See ECF No. 212 at 16-26. Accordingly, any evidence of Under Armour's sales history is not admissible because it would be more prejudicial than probative. Fed. R. Evid. 403.

Sunday Players argues that the Court overlooked evidence that an entity it calls "Sunday Players/Kellwood" was comparable to Under Armour in part because of Kellwood's extensive manufacturing and marketing power. But Sunday Players cannot claim any value based on *Kellwood's* assets. The question is what a willing buyer would have paid for Sunday Players and Sunday Players alone—including whatever manufacturing, market penetration, and product delivery capabilities it had in March 2005. No reasonable purchaser would calculate a company's value based on assets that it does not own.

Sunday Players also argues that a willing purchaser would have considered Under Armour's profit history in taking into account profits Sunday Players would have earned if Kellwood had not breached. But the Court has already ruled that Sunday Players *has not proven lost profits*. And the Court has already ruled that Under Armour's historical performance *is not relevant* to determining any profits Sunday Players might have earned. Even in the absence of those rulings, evidence of Under Armour's profit history would be excluded. When valuing Sunday Players, a factfinder must look to the actual historical evidence of its value. It need not "guess what would have happened in some alternate world" where Sunday Players achieved the same success as Under Armour. ECF No. 212 at 28.

Finally, the plaintiffs seek to introduce additional evidence that they believe will prove that the companies were comparable. But the plaintiffs already chose their trial evidence, and it was not sufficient to prove that point. That is the law of the case. The parties have had their battle and will not stage a reenactment. Zdanok, 327 F.2d at 953.

### D. The Testimony of Sunday Players's Owners

Kellwood argues that Sunday Players's owners are not competent to estimate the company's value. Sunday Players argues that the Federal Rules of Evidence permit a business owner to testify as a lay opinion witness based on his or her own knowledge of the company's operations and value.

Federal Rule of Evidence 701 authorizes lay opinion testimony only when it is "rationally based on the witness's perception," "helpful to clearly understanding the witness's testimony or to determining a fact in issue," and "not based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701. The rule authorizes "the owner or officer of a business to testify to the value or projected profits of the business without the necessity of qualifying the witness as an accountant, appraiser, or similar expert." Fed. R. Evid. 701 Advisory Comm. Notes, 2000 Amendments. This testimony is admitted "because of the particularized knowledge that the witness has by virtue of his or her position in the business." Id.

But owners can give lay opinion evidence only on matters that are within their personal knowledge and experience. Rule 701 assumes that a business owner will draw his or her valuation from an established track record. When a business does not have such a track record, and the business owner has no experience running a similar business, the lay opinion testimony will not be admissible. For example, in Von Der Ruhr v. Immtech Int'l, Inc., the court excluded the testimony of a business owner who "intended to testify to his expectations of millions of

10

dollars in profits from a brand new drug, which had not been approved by the FDA, which still needed a corporate partner, and for which no competitive market analysis had been conducted." 570 F.3d 858, 863 (7th Cir. 2009). The court concluded that his expectations exceeded his knowledge because the owner had no personal experience taking a drug to market or even making money off of pharmaceuticals. Id. at 863-64. Similarly, the court in Ho Myung Moolsan, Co. v. Manitou Mineral Water, Inc. rejected a business owner's "wildly speculative sales projections" that were "supported neither by data of actual sales nor independent market research." 07-cv-7483 (RJH), 2010 WL 4892646, at *10-11 (S.D.N.Y. Dec. 2, 2010); see also US Salt, Inc. v. Broken Arrow, Inc., 563 F.3d 687, 690 (8th Cir. 2009); In re Marketxt Holdings Corp., 04-12078 (ALG), 2011 WL 1422012, at *2-3 (Bankr. S.D.N.Y. Jan. 7, 2011).

As the Court has already found, Sunday Players had no significant history of past sales. See ECF No. 212 at 14-15. It was a start-up apparel company that strove to break into a market at the early stages of its growth. It had no sure route to success. Sunday Players's principals cannot therefore draw from their prior experience of running the company to estimate its value. Nor can they draw from any experience in launching analogous companies. Sunday Players's officers and employees already testified at the first trial, and the plaintiffs did not show that any of them had experience running an apparel company or launching a new sports apparel brand. None of the witnesses had ever bought or sold a clothing company before and none of them had prior experience licensing their intellectual property. The Court has seen no evidence suggesting that the plaintiffs held back any evidence proving otherwise. The witnesses' firsthand experience was limited to selling to small retailers and local colleges and high schools. The sales totaled less than two hundred thousand dollars. Testimony about those sales might be relevant to show that

Sunday Players had a modest value at the time of breach. It is not sufficient to show that the company was worth millions of dollars.

Of the plaintiffs' remaining proffered witnesses, two appear to be former NFL players (Clinton Portis and Takeo Spikes) who would each testify as "a business owner and consumer of apparel." ECF No. 221 at 10. Their general observations about running a business and wearing clothes would not be relevant for quantifying Sunday Players's business value. Two witnesses, Willie Jackson and Rick King, would testify about their "observations as a business owner and operative in sales, advertising, marketing, athletic apparel, business operations, and the industry generally." Id. at 10-11. But general observations about the athletic apparel industry would not be relevant for proving Sunday Players's value. Any lay opinion offered by these witnesses would be inadmissible because they are not the "owner or officer" of Sunday Players and do not have the requisite personal knowledge of its operations. Fed. R. Evid. 701 Advisory Comm. Notes, 2000 Amendments.  Finally, Megan Hughes, who apparently had a role in developing Sunday Players's product line, would testify about her "research and experience in the industry generally." ECF No. 221 at 9. But she also lacks the requisite personal knowledge of Sunday Players's operations because she was not its owner or officer. Even assuming she had personal knowledge of the company's operations, her testimony would suffer from the same flaws as the owners' and officers'—the company had no track record and she is not an expert at valuing business assets.

### E. Evidence of Prior Offers or Sales

The record shows that Sunday Players had never been bought or sold before. At trial, Washington testified that Kellwood offered to buy the company, but he did not give a firm offer amount. The plaintiffs argue that Kellwood's contemporaneous purchase of Phat Fashions should

serve as a benchmark for its value because Kellwood told a Sunday Players principal that this "could be Sunday Players one day." ECF No. 172 at 177 (Tr. 551:23-25). The Court has already decided that this evidence will be excluded. Kellwood's flattery cannot be construed as a bona fide offer to buy the company for $140 million.

### F.     Sales and Marketing Evidence Will be Excluded

At trial, Sunday Players failed to prove that it would have made millions of dollars in profits if only Kellwood had followed its preferred marketing strategy. See ECF No. 212 at 16-20. The plaintiffs presented no expert testimony in support, and its lay testimony was insufficient as a matter of law to prove their case. For the same reason, this testimony cannot prove lost business value.

Christopher Plumlee, the company's director of sales, proposed to copy Under Armour's "top-down" and "bottom-up" approach to marketing. Id. at 5. But he presented no specific evidence showing how marketing drives sales. He had no data on how much money Under Armour had spent on marketing, where it targeted its marketing, or how a marketing strategy would have to cope with a changed marketplace following Under Armour's success. In short, "he had no basis for concluding that a company could break into the compression apparel market simply by following the same path that Under Armour had already taken." Id. at 18. Angela Jackson, a former MTV executive, testified about MTV's promises to market and promote Sunday Players. But her testimony was also void of specifics about the effectiveness of MTV marketing, the scale of marketing required to launch a new brand, and the size of a campaign that would be required to compete with Under Armour. Id. Moreover, as discussed in the JMOL Order, any MTV marketing was itself speculative, as it was triggered only after $500,000 of completed sales. Together, the testimony of Plumlee and Jackson was not enough to show a link

between marketing and lost profits, and, for the same reason, it is not relevant to a calculation of lost value, which is merely a measure of what a buyer would pay for a chance at future profits.

Even if testimony of Sunday Players's sales and marketing efforts were probative of its value, it would be useless without expert testimony. The effect of sales and marketing on market value is "beyond the ken of the average juror." Id. at 35. It may be that the sales experience and marketing plans of Plumlee and Sunday Players's other principals had value on the marketplace. It may be that an investor would pay something for Sunday Players's brand name and quality apparel, its connection to professional athletes, and the potential interest of merchandisers and consumers. But placing a value on those assets requires expertise, and the plaintiffs chose not to proffer an expert on marketing. It can therefore offer no admissible testimony, aside from sheer surmise and speculation, ascribing any quantifiable value to its intangible assets.

## CONCLUSION

The Court GRANTS Kellwood's motion *in limine* and the plaintiffs' motion to exclude the testimony of Gary Trugman. The trial scheduled to begin September 13, 2016, is ADJOURNED. The parties are ORDERED to present oral argument on September 7, 2016, at 10:00 a.m. in Courtroom 219, Thurgood Marshall U.S. Courthouse, 40 Foley Square, New York, New York, on why the Court should not reconsider the JMOL Order and grant judgment as a matter of law for the plaintiffs and award $1. Fed. R. Civ. P. 50.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:   New York, New York
         September 6, 2016